IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

HAFCO FOUNDRY AND MACHINE
COMPANY, INCORPORATED,

    **Plaintiff,**

**v.**                      **CIVIL ACTION NO. 1:15-16143**

GMS MINE REPAIR AND
MAINTENANCE, INC.,

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant's motion for judgment as a matter of law ("JMOL") or, in the alternative, for a new trial. (ECF No. 94). For the reasons discussed below, the motion for a new trial is **GRANTED** in part and **DENIED** in part. The motion for judgment as a matter of law is **DENIED**.

## I. Background

Plaintiff Hafco Foundry and Machine Company, Inc. ("Hafco") filed the instant action for patent infringement on December 15, 2015. Hafco owns the patent for a Rock Dust Blower, U.S. Design Patent No. D681,684S. In 2014, Hafco entered into an agreement with Pioneer Conveyor, an affiliate of GMS Mine Repair and Maintenance, Inc. ("GMS"), by which Pioneer Conveyor was to distribute Hafco rock dust blowers to mining customers. The distribution agreement between Hafco and Pioneer Conveyor was terminated in or around April or May 2015. According to Hafco, following termination of the aforementioned distribution

agreement, GMS began selling infringing rock dust blowers within
the Southern District of West Virginia. GMS, on the other hand,
contends that its rock dust blower did not infringe the '684
design patent.

Trial of this matter began on May 15, 2017. After a three-
day trial, the jury returned a verdict finding that GMS had
infringed Hafco's `684 patent and that the infringement was
willful. The jury awarded Hafco damages in the amount of
$123,650. On May 18, 2017, the court entered judgment in
plaintiff's favor in the amount of $123,650. The instant motion
followed.

## II. Standard of Review

The United States Court of Appeals for the Federal Circuit
has exclusive jurisdiction over an appeal from a final decision
of a district court when the action "arise[s] under the patent
laws." Biotechnology Indus. Org. v. Dist. of Columbia, 496 F.3d
1362, 1367 (Fed. Cir. 2007) (citing Christianson v. Colt Indus.
Operating Corp., 486 U.S. 800, 807 (1988)). The law of the
regional circuit controls the standard of review for the denial
of a motion for JMOL and a motion for a new trial. Wordtech
Sys., Inc. v. Integrated Networks Solutions, Inc., 609 F.3d 1308,
1312 (Fed. Cir. 2010); see also AbbVie Deutschland GmbH & Co., KG
v. Janssen Biotech, Inc., 759 F.3d 1285, 1295 (Fed. Cir. 2014)
("In patent appeals, we apply the law of the regional circuit to

which the district court appeals normally lie, unless the issue pertains to or is unique to patent law.") (internal quotation and citation omitted).

Once a jury has returned its verdict, there are limited circumstances that allow the court to overturn it. The same standard applicable to a motion for summary judgment controls the analysis of a Rule 50(b) motion. Dennis v. Columbia Colleton Med. Ctr., Inc. et al., 290 F.3d 639, 644 (4th Cir. 2002). "[W]hen a jury has returned a verdict, the district court may grant a Rule 50(b) motion for judgment as a matter of law only if, `viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party.'" Pitrolo v. Cnty. of Buncombe, No. 09-2051, 407 F. App'x 657, at *1 (4th Cir. 2011) (quoting Int'l Ground Transp. Inc. v. Mayor & City Council of Ocean City, 475 F.3d 214, 218-19 (4th Cir. 2007)) (unpublished). Essentially, if a reasonable jury could only rule in favor of defendant, the court should grant its motion, but if reasonable minds could differ, the court must affirm the jury's verdict. See Dennis, 290 F.3d at 645 (citing Sales v. Grant, 158 F.3d 768, 775 (4th Cir. 1998)). In analyzing defendant's motion, the court must draw all reasonable inferences in plaintiff's favor but may not

weigh the evidence or assess the credibility of the witnesses.
See id. (citing Baynard v. Malone, 268 F.3d 228, 234 (4th Cir. 2001)).

A similar set of strictures apply to the court's consideration of a motion under Rule 59.  Pursuant to Federal Rule of Civil Procedure 59, a court may "on motion grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  According to our court of appeals, a new trial is warranted when (1) "the verdict is against the clear weight of the evidence;" (2) the verdict "is based upon evidence which is false;" or (3) the verdict "will result in a miscarriage of justice."  McFeeley v. Jackson Street Entertainment, LLC, 825 F.3d 235, 247 (4th Cir. 2016) (quoting Buckley v. Mukasey, 538 F.3d 306, 317 (4th Cir. 2008)).  "The grant or denial of a motion for a new trial is entrusted to the sound discretion of the district court and will be reversed on appeal only upon a showing of abuse of discretion."  Bennett v. Fairfax Cnty., 432 F. Supp. 2d 596, 599 (E.D. Va. 2006).

### III. Analysis

GMS contends that it is entitled to JMOL and/or a new trial for several reasons.  First, GMS argues that court erred in excusing for cause prospective jurors with ties to Massey Energy and/or Alpha Natural Resources (collectively "Massey").  GMS also

contends that a new trial is warranted because of alleged improprieties in Hafco's closing argument and errors in the court's instructions to the jury.  In addition, GMS contends that there was insufficient evidence to support the jury's verdict as to liability and that the court erred in not allowing GMS to introduce evidence regarding patent invalidity.  Finally, GMS argues that the damage award of $123,650 was not supported by the evidence.  The court takes each in turn.

A.  ***Alleged errors in jury selection.***

GMS argues that it was denied its right to a fair trial and impartial jury because prospective jurors associated with Massey Energy Company ("Massey") were improperly excused.

On April 5, 2010, an explosion occurred at the Upper Big Branch Mine ("UBB") in Raleigh County, West Virginia, in which twenty-nine (29) coal miners tragically perished.  See United States v. Blankenship, 846 F.3d 663, 666 (4th Cir. 2017).  Massey owned and operated the Upper Big Branch mine.  See id.  Although vigorously disputed by Massey, investigators pointed to inadequate rock dusting as one of the causes of the explosion at

UBB.[1]  See In re Massey Energy Co. Sec. Litig., 883 F. Supp. 2d 597, 605 (S.D.W. Va. 2012).

Counsel for Hafco, Andrew Fusco, represented a number of employees involved in or associated with the Upper Big Branch explosion in various lawsuits.  During voir dire, Hafco moved to excuse those jurors with ties to Massey and/or Alpha Natural Resources ("Alpha").[2]  Although those prospective jurors indicated that they did not know Mr. Fusco and that they could nevertheless be fair and impartial, Hafco maintained that, given the extensive publicity surrounding the UBB explosion and the negative public opinion regarding Massey, those jurors should be excused for cause.[3]  Although the court was initially inclined to do individual follow-up questioning with each of these

---

[1] At trial, William Fornaci, Hafco's chief engineer and co-president, testified that it was a federal requirement that the walls of a coal mine must be coated with rock dust.  According to Fornaci, coating the walls of a mine with rock dust makes the mine safer because rock dust helps extinguish a fire.  He further testified that Hafco's rock dust blower was used as a means of distributing rock dust throughout the mine.

[2] On June 1, 2011, Alpha acquired Massey.  See Skeens v. Alpha Natural Resources, Inc., Civil Action No. 5:12-cv-06854, 2013 WL 1966238, *2 (S.D.W. Va. May 10, 2013).

[3] Donald Blankenship, Massey's former chairman and CEO, was convicted in this court of conspiring to violate federal mine safety laws and regulations.  See Blankenship, 846 F.3d at 666. Because of the extensive negative media coverage surrounding his trial and the UBB explosion, Blankenship filed three motions to transfer venue.  See United States v. Blankenship, CRIMINAL ACTION NO. 5:14-cr-00244, 2015 WL 8485263 (S.D.W. Va. Dec. 9, 2015).

prospective jurors, the court determined that such questioning would ultimately taint the prospective jurors. The court granted Hafco's motion and excused Jurors 21, 26, 27, and 37 for cause. The court explained to the parties that only one of the veniremen stricken for cause had <u>any</u> possibility of serving on the jury given the order in which the jurors were seated and the manner in which the court allowed the parties to exercise their peremptory challenges.[4]

"It is the settled law of this circuit that a district judge retains `a very broad discretion in deciding whether to excuse a juror for cause and his decision will not be overturned except for manifest abuse of that discretion.'" <u>United States v.</u>

---

[4] Each prospective juror is assigned a number by the computer. The numbers are randomly assigned by the computer and the court has no input into the order of the prospective jurors. In this case, the venire was composed of 37 jurors and each assigned a number from 1 to 37. Because of the extra peremptory strikes afforded to each side, the court needed a total of 20 persons to seat the jury in this case: eight people to serve on the jury and six peremptory strikes per side. As is the court's customary practice, the first twenty people remaining on the computer-generated list, taking into account persons excused for cause, were the only ones who would have been able to serve on this jury. <u>See</u> ECF No. 80. Therefore, the fact that the court excused Jurors No. 26, 27, and 37 for cause, did not prejudice GMS because, based upon the order in which the jurors were seated, they never would have been selected to serve on this jury. <u>See</u> <u>Fierro v. Ruesch Corp.</u>, 610 F. Supp. 778, 783 (E.D. Penn. 1985) ("The panel members that plaintiff asked to have excused were #10 and #15. Because of the manner in which the jury was selected, #15 could not have served as a juror in the case in any event.").

<u>Turner</u>, 389 F.3d 111, 115 (4th Cir. 2004) (quoting <u>Poynter v.</u>
<u>Ratcliff</u>, 874 F.2d 219, 222 (4th Cir. 1989)).

> An abuse of discretion can be found in either of two
> ways. First, a district court abuses its discretion if
> it ignores a per se rule of disqualification after
> counsel moves to exclude a venireman. Second, if the
> court demonstrates a clear disregard for the "actual
> bias" of an individual venireman, reversal is
> justified.

<u>Id.</u>

"The decision whether to exclude prospective jurors . . .
should be made in each instance on the particular facts involved
and under the established principles governing excuse for cause."
<u>Poynter</u>, 874 F.2d at 222. "The decision of a trial judge to
dismiss a juror for cause is given deference." <u>Shabazz v. Hall</u>,
No. 12-CV-50355, 2015 WL 4561272, *4 (N.D. Ill. July 29, 2015);
<u>see also</u> <u>Patton v. Yount</u>, 467 U.S. 1025, 1038 (1984) (noting that
a trial court's evaluation of a juror is entitled to "special
deference"); <u>United States v. McCarthy</u>, 961 F.2d 972, 976 (7th
Cir. 1992) ("There are few aspects of a jury trial where we would
be less inclined to disturb a trial judge's exercise of
discretion, absent clear abuse, than in ruling on challenges for
cause in the empanelling of a jury.") (internal quotation and
citations omitted).

GMS failed to demonstrate any prejudice it suffered because
Juror No. 21 was excused for cause. "Our standard of review
mandates that a trial court's decision to strike a juror for

cause be reversed only where a defendant can show actual prejudice." Cravens v. Smith, 610 F.3d 1019, 1031 (8th Cir. 2010) (holding that district court did not abuse its discretion in striking two jurors for cause, in part because movant was unable to show "actual prejudice" by the court's decision). First, the parties were given three additional peremptory strikes per side. It is almost certain that Hafco would have used one of its peremptory strikes on Juror Number 21 if the court had not stricken him for cause. Therefore, GMS can only speculate that Juror No. 21 would have been empaneled but for the court's excusing him for cause. Further, GMS does not argue that any juror who actually decided this case was unqualified or biased. See United States v. Jensen, 41 F.3d 946, 960 (5th Cir. 1994) (holding that district court's sua sponte dismissal of prospective juror was not reversible error where movant did not contend that any member of empaneled jury was biased); Shabazz, 2015 WL 4561272, at *7 ("[D]espite Plaintiff arguing that he `would have likely exercised his last peremptory challenge on the final juror' he cannot show any harm in the form of an unqualified or partial juror who actually decided the case. . . . He is asking the Court to grant a new trial in the absence of harm.").

Finally, GMS's argument that excusing Juror No. 21 for cause "eliminated virtually every member of the jury panel who had any

significant connection to the coal industry,[5] except one

potential juror whom Plaintiff subsequently got rid of with one

of its peremptory strikes[,]" see ECF No. 94 at p.2, does not

ring true.  During voir dire, the following veniremen testified

as follows:

- Juror No. 4 indicated that her husband was a former mine worker.

- Juror No. 5 indicated that her stepfather worked in the coal mines for Massey/Alpha.

- Juror No. 7 stated that her husband was a retired coal miner and that both her son and stepson were coal miners (who had previously worked for Alpha).

- Juror No. 9 was a coal miner and testified that he had used rock dust blowers in his work.

- Juror No. 12 stated that most of his wife's family worked in mines or were associated with mining and that he had rock dusted in the past.

- Juror No. 15 testified that her grandfather was a coal miner.

- Juror No. 16 indicated that her uncle worked in coal mines for years.

- Juror No. 17 indicated that his grandfather was a state mine inspector.

- Juror No. 18 indicated that her father did surface mining for approximately 25 years and her grandfather was involved in mining construction.

---

[5] While GMS might have preferred to have coal miners on the jury because it thought they would be helpful to its position, it was entitled only to a fair and impartial jury – not a favorable one.  See Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 511 n.9 (1984).

- Juror No. 22 testified that both his father and
  grandfather worked in underground mines for years.

All of these prospective jurors were on the final list from which
the parties exercised their peremptory strikes.  Jurors No. 5,
12, 15, 16, and 18 actually served on the jury while the others
were stricken through the use of peremptory strikes.  Given the
foregoing, it is clear that the court did not systematically
eliminate every prospective juror with a connection to the coal
mining industry.

> The Supreme Court has long held that a litigant is
> "entitled to a fair trial but not a perfect one."
> McDonough Power Equip., Inc. v. Greenwood, 464 U.S.
> 548, 553 (1984).  The process of voir dire is designed
> to help impanel a "fair [and] impartial jury, not a
> favorable one."  Press-Enterprise Co. v. Superior Court
> of California, 464 U.S. 501, 511 [n.9] (1984).

Kelley v. Wegman's Food Markets, Inc., 98 F. App'x 102, 104 (3d
Cir. 2004) ("It would have been preferable if the jurors had been
questioned on the record in the presence of the District Court
and if the jurors now at issue had been questioned in greater
depth about their familiarity with the Wegmans' store in question
and their ability to sit impartially.  Nevertheless, we cannot
say that the District Court abused its discretion under the
particular circumstances here [in excusing the jurors for
cause.]").  Under the facts and circumstances of this case, GMS
has failed to show that Juror No. 21's excusal for cause was
manifest error such that a new trial is warranted.

**B.    *Alleged improprieties in Hafco's closing argument.***

According to GMS, during closing arguments, Hafco did the following: 1) "falsely declared to the jury . . . that Hafco and GMS were the only competitors in the market segment"; 2) "deceptively suggested to the jury that a prior distributorship agreement between Plaintiff and Defendant . . . had a one year term"; and 3) "deceptively referred to Plaintiff's product as a `machine'".  ECF No. 94 at p.3.  Hafco contends that "[t]hese false and misleading statements . . . were especially prejudicial to Defendant because each of them goes directly to the factors by which the jury was instructed to consider the issue of willfulness."  Id.  Notably, GMS did not make specific citations to the trial transcript to support its arguments about what was actually said during closing argument.

GMS failed to object to the allegedly improper argument during trial.  According to our appeals court: "It is the universal rule that during closing argument counsel cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial."  Dennis v. Gen. Elec. Corp., 762 F.2d 365, 366-67 (4th Cir. 1985) (internal citations and quotations omitted); see also United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238-39 (1940) ("[C]ounsel . . . cannot as a rule remain silent, interpose no objections, and

after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial."). Therefore, a motion for a new trial should be denied "where the moving party has failed to timely object to the alleged impropriety giving rise to the motion." <u>Id.</u> at 367. "The failure to object at the proper time will be overlooked on appeal only if exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired." <u>Id.</u>

Given GMS's failure to object when the statements were made, it is foreclosed from doing so now unless "exceptional circumstances" exist. GMS does not offer <u>any</u> reasons why the court should consider its objections at this juncture, much less any reason sufficient to overcome its failure to object. Accordingly, the argument is waived. <u>See</u> <u>Dennis</u>, 762 F.2d at 367 ("By remaining silent, plaintiffs provided the court no opportunity to grant them the very relief they now request. Instead, gambling on a favorable verdict, the plaintiffs permitted the trial to proceed, and the jury to retire to reach a verdict. Only after an adverse verdict have the plaintiffs raised this point. In such a situation, they cannot claim harm from what they had opportunity to remedy, but did not.") (internal citation omitted); <u>West Franklin Preservation Limited Partnership v. Nurtur North Carolina, LLC</u>, 1:14cv266, 2016 WL

3039832, *2 (M.D.N.C. May 27, 2016) ("[I]mproper remarks in closing arguments do not provide grounds for a new trial unless the error is inconsistent with substantial prejudice. . . . This is particularly true when a party fails to object to the allegedly improper argument at trial.") (internal quotation and citation omitted); Morris v. Bland, No. 5:12-cv-3177-RMG, 2014 WL 12637911, *8 (D.S.C. Dec. 31, 2014) ("Defendants did not object to this statement when made or move for a mistrial after closings, outside of the presence of the jury; this it is waived."); VS Technologies, LLC v. Twitter, Inc., Civil Action No. 2:11cv43, 2012 WL 1481508, *12 (E.D. Va. Apr. 27, 2012) ("As Plaintiff failed to timely object to comments made to the jury during closing argument, Plaintiff's motion for a new trial should not be granted. Further, any failure to object to such comments cannot be overlooked because they do not constitute errors so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired.") (internal quotation and citation omitted); Liggins v. Clarke County School Board, Civil Action No. 5:09CV00077, 2010 WL 4286147, *3 (W.D. Va. Oct. 28, 2010) ("While Liggins argues that counsel's comments were so prejudicial as to warrant a new trial, he did not object when the statements were made during closing argument and may not do so now for the first time."); Liggett Group, Inc. v. Brown & Williamson Tobacco Corp., 748 F. Supp. 344, 365-66 (M.D.N.C.

1990) (denying motion for a new trial where movant failed to
object to allegedly prejudicial closing arguments during trial).

Furthermore, even if exceptional circumstances did exist to
warrant the court's consideration of GMS's belated arguments, GMS
would still not be entitled to a new trial because there was no
improper argument.  With respect to the first of the allegedly
false and misleading statements, the record reflects that Hafco
did <u>not</u> argue that Hafco and GMS were the only competitors in the
market segment.  <u>See</u> Exhibits A and B (ECF Nos. 97-1, 97-2).
Furthermore, when confronted with plaintiff's memorandum in
opposition on this point, GMS did not file a reply brief in order
to point out those specific parts of the record where this
statement was allegedly made.  Accordingly, GMS's argument must
fail.

Likewise, counsel for Hafco did not "deceptively suggest[]"
during closing that the distributorship agreement had a one-year
term.  <u>See</u> <u>id.</u>  During his closing, plaintiff's counsel actually
said this:

> Hafco entered into this contract to hear about
> this great new device that these folks had engineered,
> designed, and patented.  This is something good for the
> business.  This is something we can really sell.  We
> want to learn all about it.
>
> Then for a year they made a half-hearted attempt
> at selling it.  And all they really did was provide
> devices to customers we already had.  They didn't grow
> the market like they were supposed to.  So Hafco
> terminated the agreement.

> So at that point, they had been working with the
> device for a year. They know the device. The device
> is now identified in the marketplace with GMS because
> they're selling it. And we get terminated, or we
> terminate them.

ECF No. 97-1 at pp.12-13. As the foregoing makes clear,
plaintiff's counsel was essentially arguing that GMS sold the
rock dust blower on behalf of Hafco and after approximately a
year, dissatisfied with the results, Hafco terminated the License
and Distributorship Agreement. There is nothing to suggest that
counsel's argument in this regard was false or that it
contradicted the terms of the distributorship agreement.
Defendant's argument is without merit.

GMS also contends that Hafco's reference to the rock dust
blower as a "machine" during closing argument mandates the grant
of a new trial because doing so violated the court's ruling
regarding the exclusion of evidence regarding functionality of
design. First, the rock dust blower is a machine so there is
nothing false or misleading about the use of that word. Second,
the use of the word "machine" did not open the door to the type
of evidence that GMS sought to introduce during trial. "[T]he
fact that the article of manufacture serves a function is a
prerequisite of design patentability, not a defeat thereof. The
function of the article itself must not be confused with
"functionality" of the design of the article." Hupp v. Siroflex
of Am., Inc., 122 F.3d 1456, 1460 (Fed. Cir. 1997).

Furthermore, even if Hafco's closing argument was improper, the court's jury instructions cured any prejudice resulting from the allegedly improper remarks. In its preliminary instructions to the jury, the court specifically informed the jury that

> The evidence from which you will find the facts will consist of the testimony of witnesses, documents, and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that the Court may instruct you to find. Certain things are not evidence and must not be considered by you as evidence. And I'll list them for you now. First, statements, arguments, and questions by lawyers are not evidence.

In addition, the jury in this case was specifically instructed:

> Although the statements and arguments of counsel are beneficial in aiding your understanding of the issues and evidence, they do not constitute evidence in the case, unless made as an admission or stipulation of fact. When the attorneys on both sides stipulate or agree as to the existence of a fact, however, you must accept the stipulation as evidence, and regard that fact as proved.

Jury Charge, Court Exhibit C at p.4 (ECF No. 89-3); see also United State v. Smith, 918 F.2d 1551, 1562 (11th Cir. 1990) ("Because statements and arguments are not evidence, improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered."). Finally, "[i]n determining whether there is a reasonable probability that the verdict of a jury has been influenced by improper conduct, warranting a new trial, the Court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their

possible relevancy to the real issues before the jury, the manner in which the parties and the Court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself." <u>Michigan First Credit Union v. Cumis Ins. Soc., Inc.</u>, No. 05-CV-74423, 2009 WL 1664088, at *7 (6th Cir. June 15, 2009) (holding that improper analogy used by plaintiff's counsel in closing did not warrant a new trial because it consumed little more than one page in a transcript of argument that exceeded one hundred pages and following a trial that spanned three weeks). In this case, Mr. Fusco made one potentially objectionable isolated comment, during closing arguments. Accordingly, "there is simply no evidence that Plaintiff's argument `permeated the entire atmosphere of the trial' or caused the jury to make its determination on improper grounds." <u>Ventas, Inc. v. HCP, Inc.</u>, Civil Action No. 3:07-CV-238-H, 2009 WL 3855638, *6 (W.D. Ky. Nov. 17, 2009); <u>see also</u> <u>Third Wave Techs., Inc. v. Stratagene Corp.</u>, 405 F. Supp. 2d 991, 1010 (W.D. Wis. 2005) ("Even if I find that plaintiff's counsel's remarks closed the line, which I do not, they were of minimal import in the context of the closing argument and the ten days of trial. The jury was instructed that arguments of counsel are not evidence.").

C.   *Errors in the court's jury instructions.*

With respect to the court's instructions to the jury, GMS argues:

> During jury instruction, the jury was instructed, at
> one point and one point only, (Jury Instructions pages
> 15-16) on the Gorham test for infringement.
> Thereafter, to Defendant's prejudice and over
> Defendant's objection, the jury was repeatedly
> instructed that the "sole" test for infringement is
> whether the products are "substantially the same,"
> (Jury Instructions page 16, paragraph 3, sentences 1
> and 2) thus incompletely and prejudicially abridging
> the Gorham test.

ECF No. 94 at p.5.

GMS concedes that the Gorham test for infringement is the

correct one and that the jury was so instructed. GMS also

acknowledges that the court instructed the jury on the definition

of "substantially the same." "[J]uries are presumed to follow

the court's instructions." CSX Transp., Inc. v. Hensley, 129 S.

Ct. 2139, 2140 (2009). GMS's real argument is that the court did

not repeat its definition of "substantially the same" twice on

the same page of its instructions.

A party seeking a new trial based on erroneous jury

instructions must establish that "(1) it made a proper and timely

objection to the jury instructions; (2) those instructions were

legally erroneous; (3) the errors had prejudicial effect; and (4)

it requested alternative instructions that would have remedied

the error." Advanced Display Sys. v. Kent State Univ., 212 F.3d

1272, 1281 (Fed. Cir. 2000) (internal citations omitted). The

determination of whether the instructions were legally erroneous

is a question of law. See id. at 1282. "When reviewing an

instruction for legal error, this court reads the instructions as

a whole and considers them in light of the entire charge to the jury." Id.

Reviewing the instructions in this case in their totality, the court concludes that the jury was properly instructed and finds no prejudice suffered by defendant.

**D.   *Issues surrounding patent invalidity.***

On the eve of trial, GMS filed a motion challenging the validity of the patent.  The court scheduled a hearing on the motion and continued the trial.  At that hearing, the only evidence offered by GMS with respect to the patent's validity was the concomitant utility patent.  No witnesses were called – expert or otherwise.  "[P]atents are presumed to be valid and overcoming this presumption requires clear and convincing evidence." Alcon Research Ltd. v. Barr Labs., Inc., 745 F.3d 1180, 1188 (Fed. Cir. 2014).  Given the dearth of evidence presented, the court concluded that GMS had not shown by clear and convincing evidence that the patent was invalid and denied GMS's motion to that effect. See ECF No. 59.  The court did, however, leave the window open for GMS to argue the invalidity of the patent to the jury if it presented sufficient evidence to get that issue before the jury.  Therefore, it is disingenuous for GMS to now argue that it "was precluded from offering evidence at trial or arguing to the jury that Plaintiff's design patent was invalid. . . ." ECF No. 94 at p.5.  GMS offered no evidence at

trial nor did it proffer to the court any proposed evidence on this issue other than, perhaps, the utility patent. Significantly, however, GMS did not propose how it expected to introduce the utility patent at trial nor who it would call to testify about it. If GMS wanted to argue the invalidity of the patent to the jury, it needed to offer evidence on this point. The court did not prohibit GMS from doing so.

**E.**    *Sufficiency of the evidence regarding infringement.*

GMS challenges the sufficiency of the evidence supporting the jury's finding of infringement. In order to grant a Rule 50(b) motion regarding the sufficiency of the evidence to support a jury's verdict, a court must, "without weighing the evidence or considering the credibility of the witnesses," conclude that substantial evidence does not support the jury's findings. Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir. 1999). All evidence is viewed in the light most favorable to the prevailing party and all reasonable inferences drawn in his or her favor. See id.

Drawing all reasonable inferences in Hafco's favor, the court concludes the jury's finding of infringement was supported by substantial evidence. In this case, the jury had before it a GMS rock dust blower accused of infringement. As the United States Court of Appeals for the Federal Circuit has opined, this is "very pertinent evidence on this issue." Catalina Lighting,

Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1287 (Fed. Cir. 2002)
("Catalina identifies no reason why its lamp alone does not
provide substantial evidence of whether an ordinary observer
would believe the patented lamp and the Catalina lamp to be
substantially the same."). GMS's argument on this point has no
merit.

**F.** **_Damage award not supported by the evidence._**

The jury awarded Hafco $123,650 in damages. GMS contends
that this amount represented the amount of gross revenue that GMS
realized from the sale of its infringing rock dust blower and
that gross revenue of the infringer is not a statutory remedy.
Hafco argues "there are no grounds on which the damage award
should be set aside, especially given Defendant's decision not to
elicit a shred of evidence about damages or even cross-examine
Mr. Fornaci regarding Hafco's claimed damages." ECF No. 97 at
p.10.

The only damages calculation in the record regarding Hafco's
lost profits was William Fornaci's testimony that Hafco realized
lost profits of $110,000 by GMS's sales of its infringing rock
dust blower. Therefore, the $123,650 award does not, under any
conceivable view of the evidence, represent Hafco's lost profits

As to damages in a patent case, the United States Court of
Appeals for the Federal Circuit has stated:

> The subject of damages is dual-sided, encompassing
> the questions of whether there are <u>any</u> damages, and, if

so, what should be the amount.  The former is a
question of fact, answerable by "yes" or "no" and
leaving no room for inference, speculation, estimation,
or discretion.  The latter is subject to those
exercises and may on occasion be determinable only
through an effort of the court, as here, "to do
substantial justice."  As was said in <u>Story Parchment
Company v. Paterson Parchment Paper Company</u>, 282 U.S.
555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931):

> Nor can we accept the view of that court that
> the verdict of the jury, in so far as it
> included damages for the first item, cannot
> stand because it was based upon mere
> speculation and conjecture.  This
> characterization of the basis for the verdict
> is unwarranted.  It is true that there was
> uncertainty as to the extent of the damage,
> but there was none as to the fact of damage;
> and there is a clear distinction between the
> measure of proof necessary to establish the
> fact that petitioner had sustained some
> damage, and the measure of proof necessary to
> enable the jury to fix the amount.  The rule
> which precludes the recovery of uncertain
> damages applies to such as are not the
> certain result of the wrong, not to those
> damages which are definitely attributable to
> the wrong and only uncertain in respect of
> their amount.

In patent law, the fact of infringement
establishes the fact of damage because the patentee's
right to exclude has been violated.  5 D. Chisum,
Patents § 20.03[3] at 20-142 (1986); <u>see</u> <u>Zegers v.
Zegers, Inc.</u>, 458 F.2d 726, 729-30, 173 USPQ 385,
387-88 (7th Cir.), <u>cert. denied</u>, 409 U.S. 878, 93 S.
Ct. 131, 34 L. Ed.2d 132 (1972); <u>cf.</u> <u>Del Mar Avionics,
Inc. v. Quinton Instrument Co.</u>, 836 F.2d 1320, 1326, 5
USPQ2d 1255, 1260 (Fed. Cir. 1987).  The patentee must
then prove the amount of damage.
<u>Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.</u>, 895

F.2d 1403, 1406 (Fed. Cir. 1990).

Upon a finding of infringement, Title 35 permits an award of

damages adequate to compensate the patentee for infringement, but

in no event less than a reasonable royalty. 35 U.S.C. § 284
(1994).  To recover lost profits, a patent owner must prove a
causal relation between the infringement and its loss of profits.
Oiness v. Walgreen Co., 88 F.3d 1025, 1029 (Fed. Cir. 1996).  In
other words, the burden rests on the patentee to show a
reasonable probability that "but for" the infringing activity,
the patentee would have made the infringer's sales.  See id.  To
show causation and entitlement to lost profits, a patentee must
reconstruct the market to show "likely outcomes with infringement
factored out of the economic picture."  Grain Processing Corp. v.
Am. Maize-Prods. Co., 185 F.3d 1341, 1350 (Fed. Cir. 1999)
("Reconstructing the market, by definition a hypothetical
enterprise, requires the patentee to project economic results
that did not occur.").  "To prevent the hypothetical from lapsing
into pure speculation, th[e] court requires sound economic proof
of the nature of the market."  Id.  Lost profits awards have been
affirmed "based on a `wide variety of reconstruction theories in
which the patentee has presented reliable economic evidence of
`but for' causation.'"  Ericsson, Inc. v. Harris Corp., 352 F.3d
1369, 1377 (Fed. Cir. 2003) (quoting Crystal Semiconductor Corp.
v. TriTech Microelecs. Int'l, Inc., 246 F.3d 1336, 1355 (Fed.
Cir. 2001)).

One "useful, but non-exclusive, way for a patentee to prove
entitlement to lost profits damages" is the four-factor test

articulated in <u>Panduit Corp. v. Shahlin Bros. Fibre Works, Inc.</u>,
575 F.2d 1152 (6th Cir. 1978). <u>Rite-Hite Corp. v. Kelley Co.</u>,
Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995). "The <u>Panduit</u> test
requires that a patentee establish: (1) demand for the patented
product; (2) absence of acceptable non-infringing substitutes;
(3) manufacturing and marketing capability to exploit the demand;
and (4) the amount of profit it would have made." <u>Id.</u> "A
showing under <u>Panduit</u> permits a court to reasonably infer that
the lost profits claimed were in fact caused by the infringing
sales, thus establishing a patentee's prima facie case with
respect to `but for' causation." <u>Id.</u>

Whether a patentee relies on <u>Panduit</u> or some other means of
showing entitlement to lost profit damages, it "<u>must</u> reconstruct
the market to determine what profits the patentee would have made
had the market developed absent the infringement product."
<u>Ericsson</u>, 352 F.3d at 1377 (emphasis added). In a two-supplier
market, "lost profits for all sales made by an infringer are
easier to obtain because there are only two suppliers in the
market." <u>Water Techs. Corp. v. Calco, LTD.</u>, 850 F.2d 660, 672
(Fed. Cir. 1988). However, "an accurate reconstruction of the
hypothetical `but for' market takes into account any alternatives
available to the infringer." <u>Grain Processing Corp. v. American
Maize-Products Co.</u>, 185 F.3d 1341, 1351 (Fed. Cir. 1999).

In the instant case, there was no attempt to reconstruct the market. "[Hafco] simply assumed that every sale made by [GMS] would have been theirs in the absence of the infringement." Keg Techs., Inc. v. Laimer, 436 F. Supp. 2d 1364, 1369 (N.D. Ga. 2006). The record is silent with respect to the second and third Panduit factors – absence of acceptable non-infringing substitutes and manufacturing and marketing capability to exploit the demand.

Nor did Hafco show that it was a "two-supplier market where any sale made by one competitor can be presumed attributable to its opponent were it not for the infringement." Id. at 1369-70; see Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983) ("Where, as here, the patent owner and the infringer were the only suppliers of the product, causation may be inferred."). Indeed, Hafco aggressively fought to keep any mention of other can rock dust blowers out of the record. In so doing, it made the tactical decision not to pursue a two-supplier market theory.

At best, Hafco's evidence was that its rock dust blower was the first, but not the only, can rock dust blower in the marketplace. Furthermore, there is also evidence in the record that there are "thousands" of other rock dust blowers in the marketplace, albeit not of the can variety. Therefore, there is no evidence to support the notion of an absence of non-infringing

acceptable substitutes.  For these reasons, Hafco failed to meet its burden to demonstrate an entitlement to lost profits.

"Upon a showing of infringement, a patentee is entitled to `damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" <u>ResQNet.com, Inc. v. Lansa, Inc.</u>, 594 F.3d 860, 868 (Fed. Cir. 2010) (quoting 35 U.S.C. § 284). The statute, therefore, sets a reasonable royalty as a "floor below which damages shall not fall." <u>Lucent Techs., Inc. v. Gateway, Inc.</u>, 580 F.3d 1301, 1324 (Fed. Cir. 2009).  A reasonable royalty is "derive[d] from a hypothetical negotiation between the patentee and the infringer when the infringement began." <u>ResQNet.com</u>, 594 F.3d at 868.

"Ordinarily, an inadequate showing vis-a-vis lost profits requires the Court to award the patentee a `reasonable royalty.'" <u>Keg Techs.</u>, 436 F. Supp. 2d at 1370.  In this case, Hafco elected to recover lost profits and did not offer any evidence regarding the alternative damages award of a reasonable royalty.[6]

---

[6] With respect to damages, the jury was instructed as follows:

Damages

If you find that GMS' product infringes the `684 design patent, then you must determine the amount of damages to be awarded to Hafco for the alleged infringement.  By instructing you on damages, I am not suggesting which party should win on any issue.  These instructions are provided to guide you on the calculation of damages in the event you find

27

Therefore, there is no evidence that would support an award of a

reasonable royalty.

---

infringement and thus must address the damages issue.

A plaintiff in a design patent case can elect to prove either actual damages, known as compensatory damages, or it may elect to prove the amount of defendant's profits from the sale of the infringing product as its measure of recovery.  With respect to actual damages, if you believe GMS infringed the `684 patent, Hafco is entitled to receive damages adequate to compensate it for infringement beginning on April 20, 2015 to the present.  Those damages can be in the form of lost profits or a reasonable royalty.  The term lost profits means any and all actual reduction in business profits Hafco suffered as the result of GMS' infringement of the `684 Patent.  A reasonable royalty is defined as the amount a patent owner and someone wanting to use the patented design would agree upon as a fee for use of the design.

In this case, Hafco seeks to recover lost profits resulting from GMS' infringement of the `684 Patent. If you conclude that Hafco has proved that it lost profits because of GMS' infringement, the lost profits you award should be the amount that Hafco would have made on any sales that Hafco lost because of the infringement.

Hafco has the burden of proving its calculation of damages is correct by a preponderance of the evidence. While Hafco is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Hafco is not entitled to damages that are remote or speculative.

Jury Charge at pp. 18-20 (ECF No. 89-3).

According to the Fourth Circuit, pursuant to Rule 59,[7] a damages verdict must be set aside as excessive if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false[.]" Knussman v. Maryland, 272 F.3d 625, 639 (4th Cir. 2001) (quoting Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996)). Such review requires a "comparison of the factual record and the verdict to determine their compatibility." Atlas Food Sys., 99 F.3d at 594.

"Under Rule 59(a) of the Federal Rules of Civil Procedure, a court may order a new trial nisi remittitur if it concludes that a jury award of compensatory damages is excessive." Jones v. Southpeak Interactive Corp. of Del., 777 F.3d 658, 672 (4th Cir. 2015) (internal quotation marks omitted).

---

[7] GMS filed a Rule 50(b) motion or, in the alternative, a motion for a new trial pursuant to Federal Rule of Civil Procedure 59.

> A party who neglects to raise an issue in a pre-verdict Rule 50(a) motion waives the opportunity to include that issue in a post-verdict motion. See Fed. Sav. & Loan Ins. Corp. v. Reeve, 816 F.2d 130, 137–38 (4th Cir. 1987). The Advisory Committee Note makes this clear: "Because the Rule 50(b) motion is only a renewal of the pre-verdict motion, it can be granted only on grounds advanced in the pre-verdict motion." Fed. R. Civ. P. advisory committee note.

United States v. Appalachian Regional Community Head Start, Inc., 674 F. Supp. 2d 773, 777 (W.D. Va. 2009). Because GMS did not raise the issue of the insufficiency of the evidence on damages in its Rule 50(a) motion, the court has analyzed the issue under Rule 59.

> [W]e note that a remittitur, used in connection with
> Federal Rule of Civil Procedure 59(a), is the
> established method by which a trial judge can review a
> jury award for excessiveness.  Remittitur is a process,
> dating back to 1822, by which the trial court orders a
> new trial unless the plaintiff accepts a reduction in
> an excessive jury award.  See Blunt v. Little, 3 F.
> Cas. 760 (C.C. Mass. 1822) (No. 1578) (Story, J.).  And
> the permissibility of remittiturs is now settled.  See
> 11 Charles Alan Wright, Arthur R. Miller & Mary Kay
> Kane, Federal Practice and Procedure, § 2815, at 163
> (1995).  Indeed, if a court finds that a jury award is
> excessive, it is the court's duty to require a
> remittitur or order a new trial.  See Linn v. United
> Plant Guard Workers, Local 114, 383 U.S. 53, 65-66, 86
> S. Ct. 657, 664-65, 15 L. Ed.2d 582 (1966).

Atlas Food Sys., 99 F.3d at 593; see also Shockley v. Arcan,

Inc., 248 F.3d 1349, 1362 (Fed. Cir. 2001) ("This court, like the

Fourth Circuit, has a `maximum recovery rule' which remits an

excessive jury award to the highest amount the jury could

`properly have awarded based on the relevant evidence.'")

(quoting Unisplay, S.A. v. Am. Elec. Sign Co., 69 F.3d 512, 519

(Fed. Cir. 1995)); see also Oiness v. Walgreen Co., 88 F.3d 1025,

1030 (Fed. Cir. 1996) ("A court is not at liberty to supplant its

own judgment on the damages amount for the jury's findings. . . .

Therefore, in holding that a jury damage award is excessive, a[ ]

court has two options.  It may simply reverse the jury award and

order a new trial or allow plaintiff the option of agreeing to a

remittitur in a specified amount).

Whether damages are excessive and subject to remittitur is

an issue left to the discretion of the trial court.  See Robles

v. Prince George's Cnty., 302 F.3d 262, 271 (4th Cir. 2002).  "A

trial court's evaluation of an award of compensatory damages is less searching than an award of punitive damages." <u>King v. McMillan</u>, 594 F.3d 301, 313 (4th Cir. 2010).

In the present case, the jury's award of $123,650 is against the weight of the evidence. On the evidence presented, $0 in compensatory damages is the outermost award that could be sustained. The court therefore reduces the award to $0 and grants a new trial nisi remittitur at Hafco's option.

## IV. Conclusion

For all the foregoing reasons, defendant's motion for judgment as a matter of law or, in the alternative, a new trial is **GRANTED** in part and **DENIED** in part as follows:

1)    The Motion for Judgment as a Matter of Law is denied in its entirety; and

2)    The alternative Motion for a New Trial is granted insofar as the court grants a new trial nisi remittitur. Hafco shall agree to remit damages in excess of $0 by filing a document no later than Thursday, April 5, 2018, indicating that it agrees to the remittitur. Failure to do so will result in the Court granting a new trial on the issue of damages. The motion for a new trial is denied in all other respects.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record.

IT IS SO ORDERED this 30th day of March, 2018.

ENTER:

David A. Faber
Senior United States District Judge