IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

HAFCO FOUNDRY AND MACHINE
COMPANY, INCORPORATED,

    Plaintiff,

v.                              CIVIL ACTION NO. 1:15-16143

GMS MINE REPAIR AND
MAINTENANCE, INC.,

    Defendant.


**MEMORANDUM OPINION**

By Order entered on March 30, 2018, the court granted plaintiff's motion for a permanent injunction and denied its motion for enhanced damages, attorney fees, and prejudgment and post-judgment interest.  The reasons for that decision follow.

**I. Background**

Plaintiff Hafco Foundry and Machine Company, Inc. ("Hafco") filed the instant action for patent infringement on December 15, 2015.  Hafco owns the patent for a Rock Dust Blower, U.S. Design Patent No. D681,684S.  In 2014, Hafco entered into an agreement with Pioneer Conveyor, an affiliate of GMS Mine Repair and Maintenance, Inc. ("GMS"), by which Pioneer Conveyor was to distribute Hafco rock dust blowers to mining customers. The distribution agreement between Hafco and Pioneer Conveyor was terminated in or around early May 2015.  According to Hafco, following termination of the aforementioned distribution agreement, GMS began selling infringing rock dust blowers within

the Southern District of West Virginia.  GMS, on the other hand,
contends that its rock dust blower did not infringe the `684
design patent.

Trial of this matter began on May 15, 2017.  After a three-
day trial, the jury returned a verdict finding that GMS had
infringed Hafco's `684 patent and that the infringement was
willful.  The jury awarded Hafco damages in the amount of
$123,650.00.  On May 18, 2017, the court entered judgment in
plaintiff's favor in the amount of $123,650.00.  The instant
motion followed.

## II. Permanent Injunction

The Patent Act gives courts the power to "grant injunctions
in accordance with the principles of equity to prevent the
violation of any right secured by patent, on such terms as the
court deems reasonable."  35 U.S.C. § 283.  "[A] plaintiff
seeking a permanent injunction must satisfy a four-factor test
before a court may grant such relief.  A plaintiff must
demonstrate:  (1) that it has suffered an irreparable injury; (2)
that remedies available at law, such as monetary damages, are
inadequate to compensate for that injury;  (3) that, considering
the balance of hardships between the plaintiff and defendant, a
remedy in equity is warranted; and (4) that the public interest
would not be disserved by a permanent injunction."  Monsanto Co.
v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010) (quoting eBay

Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). "An

injunction should issue only where the intervention of a court of

equity 'is essential in order effectually to protect property

rights against injuries otherwise irremediable.'" Weinberger v.

Romero-Barcelo, 456 U.S. 305, 312 (1982)(quoting Cavanaugh v.

Looney, 248 U.S. 453, 456 (1919)).

"Of course, the axiomatic remedy for trespass on property

rights is removal of the trespasser." Presidio Components, Inc.

v. American Technical Ceramics Corp., 702 F.3d 1351, 1362 (Fed.

Cir. 2012).

> Equity sets forth the four-factor test for removal
> of a trespasser from property infringement. eBay, 547
> U.S. at 391, 126 S. Ct. 1837. This analysis proceeds
> with an eye to the "long tradition of equity practice"
> granting "injunctive relief upon a finding of
> infringement in the vast majority of patent cases."
> Id. at 395, 126 S. Ct. 1837 (Roberts, C.J.,
> concurring). This historical practice of protecting
> the right to exclude through injunctive relief is not
> surprising given the difficulties of protecting this
> right solely with monetary relief. Indeed, a
> calculating infringer may thus decide to risk a delayed
> payment to obtain use of valuable property without
> prior negotiation or the owner's permission. While a
> patentee is not entitled to an injunction in every
> case, "it does not follow that courts should entirely
> ignore the fundamental nature of patents as property
> rights granting the owner the right to exclude."
> Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142,
> 1149 (Fed. Cir. 2011).

Id. at 1362-63.

The propriety of an injunction in this case will now be

considered under the rubric of the four-factor test set out

above.

## A.  Irreparable Injury

Hafco argues that it will be irreparably harmed if a permanent injunction is not granted because it will continue to lose sales to GMS.  The court agrees.

The evidence adduced at trial showed that Hafco and GMS are direct competitors in the can duster market.  "Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement for the right to exclude."  Presidio Components, Inc. v. Am. Tech. Ceramics Corp., 702 F.3d 1351, 1363 (Fed. Cir. 2012); see also Trebro Mfg., Inc. v. Firefly Equip., LLC, 748 F.3d 1159, 1171 (Fed. Cir. 2014) ("Trebro and FireFly are direct competitors selling competing products in this market.  Thus, the record strongly shows a probability for irreparable harm."); Douglas Dynamics, LLC v. Buyers Prods. Co., 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm – often irreparable – of being forced to compete against products that incorporate and infringe its own patented inventions."); I4I Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 861 (Fed. Cir. 2010) ("The district court concluded that i4i was irreparably injured by Microsoft's infringement, based on its factual findings that Microsoft and i4i were direct competitors . . . and that i4i lost market share as a result of the infringing Word products.").  The

potential for irreparable harm between direct competitors is
especially true where, as here, GMS had access to Hafco's
customer lists.  Indeed, William Fornaci testified at trial that,
during the year in which the distributorship agreement was in
place, ninety (90) percent of GMS's sales of the Hafco rock dust
blower were to preexisting Hafco customers.

Furthermore, without an injunction, it is likely that GMS
will continue to sell its infringing rock dust blower and this
fact counsels in favor of a permanent injunction.  "Price
erosion, loss of goodwill, damage to reputation, and loss of
business opportunities are all valid grounds for finding
irreparable harm."  Celsis In Vitro, Inc. v. Cellzdirect, Inc.,
664 F.3d 922, 930 (Fed. Cir. 2012); see also Robert Bosch LLC v.
Pylon Mfg. Corp., 659 F.3d 1142, 1152 (Fed. Cir. 2011) ("[T]he
district court committed a clear error in judgment when it
concluded that Bosch failed to demonstrate irreparable harm.  The
record here contains undisputed evidence of direct competition in
each of the market segments identified by the parties.  Bosch
also introduced unrebutted evidence of loss of market share and
access to potential customers. . . .").

A final factor weighing in support of the court's finding of
irreparable harm in this case is that "in the absence of an
injunction, other potential infringers will be encouraged to
infringe."  Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1456

(Fed. Cir. 1985).  For all of the foregoing reasons, the court

concludes that the first factor weighs in favor of an injunction.

**B.    Inadequate Remedy at Law**

Hafco argues that it has an inadequate remedy at law because

it will be forced to bring successive lawsuits to recover damages

based upon future sales of the infringing GMS product if its

request for injunctive relief is not granted.  Regarding the

inadequacy of monetary damages when future infringement is

likely, the United States Court of Appeals for the Federal

Circuit has opined:

> With respect to the adequacy of money damages,
> Bosch argues that it will continue to suffer
> irreparable harm due to lost market share, lost
> business opportunities, and price erosion unless Pylon
> is permanently enjoined.  According to Bosch, money
> damages alone cannot fully compensate Bosch for these
> harms.  We agree.  There is no reason to believe that
> Pylon will stop infringing, or that the irreparable
> harms resulting from its infringement will otherwise
> cease, absent an injunction.

Id. at 1155.  As discussed above, it is likely that GMS will

continue to sell its infringing product absent an injunction.

Furthermore, "[h]arm to reputation resulting from confusion

between an inferior accused product and a patentee's superior

product is a type of harm that is often not fully compensable by

money because the damages caused are speculative and difficult to

measure."  Reebok Int'l, Ltd. v. J. Baker, Inc., 32 F.3d 1552,

1558 (Fed. Cir. 1994).  With respect to damage to Hafco's

reputation, William Fornanci testified that he believed that the

6

GMS product was inferior to Hafco's and that people were confused

by the two products.  The similarity between the two products,

coupled with the prior distributorship arrangement between Hafco

and GMS, could lead to confusion between the two products and

harm to Hafco's reputation.  Harm that cannot be remedied by

money damages.  See Douglas Dynamics, 717 F.3d at 1345 (finding

"remedies at law inadequate to compensate [patentee] for at least

the reputation loss [patentee] has suffered from [defendant]'s

infringement").  As one court explained:

> The violation of a patent owner's right to exclude
> can present a situation where monetary damages cannot
> adequately compensate the patent holder for that
> injury.  For example, when an infringer saturates the
> market for a patented invention with an infringing
> product or damages the patent holder's good will or
> brand name recognition by selling infringing products,
> that infringer violates the patent holder's
> exclusionary right in a manner that cannot be
> compensated through money damages.  This is because it
> is impossible to determine the portions of the market
> the patent owner would have secured but for the
> infringer's actions or how much damage was done to the
> patent owner's brand recognition or good will due to
> the infringement.

Commonwealth Sci. and Indus. Research Organisation v. Buffalo

Tech. Inc., 492 F. Supp. 2d 600, 605 (E.D. Tex. 2007).

The court concludes there are inadequate remedies at law to

compensate Hafco for its injuries.

**C.    Balance of Hardships**

"[T]he `balance of hardships' assesses the relative effect

of granting or denying an injunction on the parties."  I4I Ltd.

P'ship, 598 F.3d at 862.  "[T]he balance considered is only between a plaintiff and a defendant, and thus the effect on customers . . . is irrelevant under this prong on the injunction test." Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1330 (Fed. Cir. 2008). Factors a court should consider in this analysis are "the parties' sizes, products, and revenue sources."  Id.

In opposing Hafco's motion for injunctive relief, GMS addresses only the irreparable harm and public interest factors. See ECF No. 95 at pp. 4-5.  In so doing, GMS does not discuss any harm that it will suffer should it be permanently enjoined from selling its rock dust blower.

The evidence at trial was that GMS did not begin selling its infringing rock dust blower until 2015.  From that date through the date of trial, GMS sold 55 rock dust blowers and realized gross revenues in the amount of $123,650.  Joshua Helbig, Operations Manager for GMS and Pioneer Conveyor, testified that the sales of the GMS rock dust blower was only a small amount of GMS's total company sales.  According to Helbig, total sales for GMS/Pioneer were around 80 million in 2015 and 50 million in 2016.  Helbig testified that GMS employed around 100 people as of the trial date.

Hafco, on the other hand, is a small family-owned company with only seven employees.  According to William Fornaci, Hafco's co-owner, Hafco's rock dust blower was a quick success and

entering into the distributorship agreement with GMS was an
effort to build on that early success.

GMS will continue to market its infringing rock dust blower
in direct competition with Hafco's products if not enjoined.  In
so doing, Hafco will be forced to compete against its own patent,
in itself, a significant hardship.  See Robert Bosch LLC v. Pylon
Mfg. Corp., 659 F.3d 1142, 1156 (Fed. Cir. 2011) (finding that
requiring a patentee to compete against its own patented
invention places a "substantial hardship" on the patentee);
Evonik Degussa GMBH v. Materia, Inc., Civ. No. 09-636 (NLH/JS),
2017 WL 3434156, *3 (D. Del. Aug. 10, 2017) ("Forcing [patentee]
to continue competing with its own patented technology would
impose a weighty hardship under the circumstances of this case,
and would be simply inequitable.").  Without a permanent
injunction, Hafco will continue to suffer irreparable injury to a
not insignificant portion of its business, and will lose future
opportunities, goodwill, and potential revenue.  In contrast, the
rock dust blower market is but a small part of GMS's overall
business and the negligible harm inflicted on GMS by the
injunction is outweighed by the potential harm to Hafco in
denying the injunction.  In the context of a permanent
injunction, the overall balance of hardships favors Hafco
especially where, as here, the injunction only affects a small
segment of GMS's business.  See I4I Ltd. P'ship, 598 F.3d at 863

(finding balance of hardships weighs in favor of granting

permanent injunction where infringing product "relates to only a

small fraction of Microsoft's sizeable business"); Pfizer, Inc.

v. Teva Pharms. USA, Inc., 429 F.3d 1364, 1382 (Fed. Cir. 2005)

("Simply put, an alleged infringer's loss of market share,

without more, does not rise to the loss of exclusivity

experienced by a patent owner due to infringing conduct.").

## D.  Public Interest

"The fourth eBay factor requires the patentee to show that

`the public interest would not be disserved by a permanent

injunction.'"  Apple Inc. v. Samsung Elecs. Co., Ltd., 809 F.3d

633, 646 (Fed. Cir. 2015) (quoting eBay, 547 U.S. at 391).  There

is an "important public interest in protecting patent rights" and

the public's interest in this regard was explained as follows:

> The district court did not abuse its discretion in
> finding that the public interest favors an injunction.
> Indeed, the public interest strongly favors an
> injunction.  Samsung is correct––the public often
> benefits from healthy competition.  However, the public
> generally does not benefit when that competition comes
> at the expense of a patentee's investment-backed
> property right.  To conclude otherwise would suggest
> that this factor weighs against an injunction in every
> case when the opposite is generally true.  We base this
> conclusion not only on the Patent Act's statutory right
> to exclude, which derives from the Constitution, but
> also on the importance of the patent system in
> encouraging innovation.  Injunctions are vital to this
> system.  As a result, the public interest nearly always
> weighs in favor of protecting property rights in the
> absence of countervailing factors. . . .

Id. (emphasis in original); see also Broadcom Corp. v. Qualcomm
Inc., 543 F.3d 683, 704 (Fed. Cir. 2008) ("[I]t is generally in
the public interest to uphold patent rights.").

"[T]he touchstone of the public interest factor is whether
an injunction, both in scope and effect, strikes a workable
balance between protecting the patentee's rights and protecting
the public from the injunction's adverse effects."  I4I Ltd.
P'ship, 598 F.3d at 863.  As a result, this factor weighs against
granting injunctive relief prohibiting infringement only "where
the product at issue is of unusual social benefit."  Presidio
Components Inc. v. Am. Tech. Ceramics Corp., No. 08-cv-335-IEG-
NLS, 2013 WL 4068833, *7 (S.D. Cal. Aug. 12, 2013) (citing
Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.,
579 F. Supp. 2d 554, 560 (D. Del. 2008)); see also Cardsoft, Inc.
v. Verifone Holdings, Inc., Case No. 2:08-CV-98-RSP, 2013 WL
5862762, *1 (E.D. Tex. Oct. 30, 2013) ("The public interest
factor appears to be otherwise neutral, as the technology and
products at issue do not implicate health or safety concerns.").

GMS alleges that the public interest would be disserved by
an injunction herein because the use of rock dust blowers
increases safety in coal mines.  However, as Joshua Helbig
himself testified, there are "thousands" of rock dust blowers on
the market.  Therefore, enjoining the manufacture and sale of
GMS's rock dust blower would not necessarily lead to a shortage

of rock dusters.  Under these circumstances, the public interest would be served by issuing an injunction to protect Hafco's patent rights.  See Celsis In Vitro, Inc. v. Cellzdirect, Inc., 664 F.3d 922, 932 (Fed. Cir. 2012) ("Though LTC argues that it sells products for drug research and development such that the public interest would disfavor enjoining LTC, both LTC and Celsis sell the same products and are in direct competition.  In other words, the public can obtain the products from Celsis."); Streck, Inc. v. Research & Diagnostic Sys., Inc., 8:06CV458, 2010 WL 11530582, *4 (D. Neb. Sept. 30, 2010) ("[T]he court finds the public interest will not be disserved by an injunction.  Although medical care is involved, there has been no showing that restraining R&D from selling integrated controls would implicate public health and safety concerns.  Streck has shown it has the ability to supply the market with necessary quantities of the products.  If there were any shortage, laboratories, hospitals, and clinics have the reasonable alternative of testing instruments with nonintegrated controls.  An injunction strikes a workable balance between protecting Streck's rights as a patentee and protecting the public.").  Accordingly, this factor weighs in favor of granting injunctive relief.

### III.  Conclusion

Having considered Hafco's request for injunctive relief under the traditional four-factor test, the court concludes that

Hafco is entitled to the injunction it seeks.  For all the

foregoing reasons, Hafco's motion for a preliminary injunction

was **GRANTED**.  Given the court's ruling on GMS's motion for a new

trial,[*] the motion for enhanced damages, attorney fees,

prejudgment interest, and post-judgment interest was **DENIED**

without prejudice.

The Clerk is directed to send copies of this Memorandum

Opinion to counsel of record.

IT IS SO ORDERED this 10th day of April, 2018.

ENTER:

_David A. Faber_
David A. Faber
Senior United States District Judge

---

[*] By Memorandum Opinion and Order entered on March 30, 2018,
the court granted GMS's motion for a new trial nisi remittitur.
(ECF No. 99).