IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

HAFCO FOUNDRY AND MACHINE
COMPANY, INCORPORATED,

    Plaintiff,

v.                           CIVIL ACTION NO. 1:15-16143

GMS MINE REPAIR AND
MAINTENANCE, INC.,

    Defendant.

## AMENDED* MEMORANDUM OPINION

By Order entered on March 30, 2018, the court granted plaintiff's motion for a permanent injunction and denied its motion for enhanced damages, attorney fees, and prejudgment and post-judgment interest. The reasons for that decision follow.

### I. Background

Plaintiff Hafco Foundry and Machine Company, Inc. ("Hafco") filed the instant action for patent infringement on December 15, 2015. Hafco owns the patent for a Rock Dust Blower, U.S. Design Patent No. D681,684S. In 2014, Hafco entered into an agreement with Pioneer Conveyor, an affiliate of GMS Mine Repair and Maintenance, Inc. ("GMS"), by which Pioneer Conveyor was to distribute Hafco rock dust blowers to mining customers. The distribution agreement between Hafco and Pioneer Conveyor was

---

*The Memorandum Opinion was amended solely to correct a typographical error on Page 13 where the word "preliminary" was used instead of "permanent."

terminated in or around early May 2015.  According to Hafco, following termination of the aforementioned distribution agreement, GMS began selling infringing rock dust blowers within the Southern District of West Virginia.  GMS, on the other hand, contends that its rock dust blower did not infringe the '684 design patent.

Trial of this matter began on May 15, 2017.  After a three-day trial, the jury returned a verdict finding that GMS had infringed Hafco's `684 patent and that the infringement was willful.  The jury awarded Hafco damages in the amount of $123,650.00.  On May 18, 2017, the court entered judgment in plaintiff's favor in the amount of $123,650.00.  The instant motion followed.

## II. Permanent Injunction

The Patent Act gives courts the power to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283.  "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate:  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;  (3) that, considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). "An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'" Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)(quoting Cavanaugh v. Looney, 248 U.S. 453, 456 (1919)).

"Of course, the axiomatic remedy for trespass on property rights is removal of the trespasser." Presidio Components, Inc. v. American Technical Ceramics Corp., 702 F.3d 1351, 1362 (Fed. Cir. 2012).

> Equity sets forth the four-factor test for removal of a trespasser from property infringement. eBay, 547 U.S. at 391, 126 S. Ct. 1837. This analysis proceeds with an eye to the "long tradition of equity practice" granting "injunctive relief upon a finding of infringement in the vast majority of patent cases." Id. at 395, 126 S. Ct. 1837 (Roberts, C.J., concurring). This historical practice of protecting the right to exclude through injunctive relief is not surprising given the difficulties of protecting this right solely with monetary relief. Indeed, a calculating infringer may thus decide to risk a delayed payment to obtain use of valuable property without prior negotiation or the owner's permission. While a patentee is not entitled to an injunction in every case, "it does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude." Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1149 (Fed. Cir. 2011).

Id. at 1362-63.

3

The propriety of an injunction in this case will now be considered under the rubric of the four-factor test set out above.

**A.   Irreparable Injury**

Hafco argues that it will be irreparably harmed if a permanent injunction is not granted because it will continue to lose sales to GMS.  The court agrees.

The evidence adduced at trial showed that Hafco and GMS are direct competitors in the can duster market.  "Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement for the right to exclude."  Presidio Components, Inc. v. Am. Tech. Ceramics Corp., 702 F.3d 1351, 1363 (Fed. Cir. 2012); see also Trebro Mfg., Inc. v. Firefly Equip., LLC, 748 F.3d 1159, 1171 (Fed. Cir. 2014) ("Trebro and FireFly are direct competitors selling competing products in this market.  Thus, the record strongly shows a probability for irreparable harm."); Douglas Dynamics, LLC v. Buyers Prods. Co., 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm – often irreparable – of being forced to compete against products that incorporate and infringe its own patented inventions."); I4I Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 861 (Fed. Cir. 2010) ("The district court concluded that i4i was irreparably injured by

4

Microsoft's infringement, based on its factual findings that Microsoft and i4i were direct competitors . . . and that i4i lost market share as a result of the infringing Word products."). The potential for irreparable harm between direct competitors is especially true where, as here, GMS had access to Hafco's customer lists. Indeed, William Fornaci testified at trial that, during the year in which the distributorship agreement was in place, ninety (90) percent of GMS's sales of the Hafco rock dust blower were to preexisting Hafco customers.

Furthermore, without an injunction, it is likely that GMS will continue to sell its infringing rock dust blower and this fact counsels in favor of a permanent injunction. "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." Celsis In Vitro, Inc. v. Cellzdirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012); see also Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1152 (Fed. Cir. 2011) ("[T]he district court committed a clear error in judgment when it concluded that Bosch failed to demonstrate irreparable harm. The record here contains undisputed evidence of direct competition in each of the market segments identified by the parties. Bosch also introduced unrebutted evidence of loss of market share and access to potential customers. . . .").

A final factor weighing in support of the court's finding of irreparable harm in this case is that "in the absence of an injunction, other potential infringers will be encouraged to infringe." Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1456 (Fed. Cir. 1985). For all of the foregoing reasons, the court concludes that the first factor weighs in favor of an injunction.

**B.  Inadequate Remedy at Law**

Hafco argues that it has an inadequate remedy at law because it will be forced to bring successive lawsuits to recover damages based upon future sales of the infringing GMS product if its request for injunctive relief is not granted. Regarding the inadequacy of monetary damages when future infringement is likely, the United States Court of Appeals for the Federal Circuit has opined:

> With respect to the adequacy of money damages, Bosch argues that it will continue to suffer irreparable harm due to lost market share, lost business opportunities, and price erosion unless Pylon is permanently enjoined. According to Bosch, money damages alone cannot fully compensate Bosch for these harms. We agree. There is no reason to believe that Pylon will stop infringing, or that the irreparable harms resulting from its infringement will otherwise cease, absent an injunction.

Id. at 1155. As discussed above, it is likely that GMS will continue to sell its infringing product absent an injunction.

Furthermore, "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by

6

money because the damages caused are speculative and difficult to measure." Reebok Int'l, Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1558 (Fed. Cir. 1994). With respect to damage to Hafco's reputation, William Fornanci testified that he believed that the GMS product was inferior to Hafco's and that people were confused by the two products. The similarity between the two products, coupled with the prior distributorship arrangement between Hafco and GMS, could lead to confusion between the two products and harm to Hafco's reputation. Harm that cannot be remedied by money damages. See Douglas Dynamics, 717 F.3d at 1345 (finding "remedies at law inadequate to compensate [patentee] for at least the reputation loss [patentee] has suffered from [defendant]'s infringement"). As one court explained:

> The violation of a patent owner's right to exclude can present a situation where monetary damages cannot adequately compensate the patent holder for that injury. For example, when an infringer saturates the market for a patented invention with an infringing product or damages the patent holder's good will or brand name recognition by selling infringing products, that infringer violates the patent holder's exclusionary right in a manner that cannot be compensated through money damages. This is because it is impossible to determine the portions of the market the patent owner would have secured but for the infringer's actions or how much damage was done to the patent owner's brand recognition or good will due to the infringement.

Commonwealth Sci. and Indus. Research Organisation v. Buffalo Tech. Inc., 492 F. Supp. 2d 600, 605 (E.D. Tex. 2007).

The court concludes there are inadequate remedies at law to compensate Hafco for its injuries.

**C.   Balance of Hardships**

"[T]he `balance of hardships' assesses the relative effect of granting or denying an injunction on the parties." I4I Ltd. P'ship, 598 F.3d at 862.  "[T]he balance considered is only between a plaintiff and a defendant, and thus the effect on customers . . . is irrelevant under this prong on the injunction test." Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1330 (Fed. Cir. 2008). Factors a court should consider in this analysis are "the parties' sizes, products, and revenue sources."  Id.

In opposing Hafco's motion for injunctive relief, GMS addresses only the irreparable harm and public interest factors. See ECF No. 95 at pp. 4-5.  In so doing, GMS does not discuss any harm that it will suffer should it be permanently enjoined from selling its rock dust blower.

The evidence at trial was that GMS did not begin selling its infringing rock dust blower until 2015.  From that date through the date of trial, GMS sold 55 rock dust blowers and realized gross revenues in the amount of $123,650.  Joshua Helbig, Operations Manager for GMS and Pioneer Conveyor, testified that the sales of the GMS rock dust blower was only a small amount of GMS's total company sales.  According to Helbig, total sales for GMS/Pioneer were around 80 million in 2015 and 50 million in

8

2016. Helbig testified that GMS employed around 100 people as of the trial date.

Hafco, on the other hand, is a small family-owned company with only seven employees. According to William Fornaci, Hafco's co-owner, Hafco's rock dust blower was a quick success and entering into the distributorship agreement with GMS was an effort to build on that early success.

GMS will continue to market its infringing rock dust blower in direct competition with Hafco's products if not enjoined. In so doing, Hafco will be forced to compete against its own patent, in itself, a significant hardship. See Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1156 (Fed. Cir. 2011) (finding that requiring a patentee to compete against its own patented invention places a "substantial hardship" on the patentee); Evonik Degussa GMBH v. Materia, Inc., Civ. No. 09-636 (NLH/JS), 2017 WL 3434156, *3 (D. Del. Aug. 10, 2017) ("Forcing [patentee] to continue competing with its own patented technology would impose a weighty hardship under the circumstances of this case, and would be simply inequitable."). Without a permanent injunction, Hafco will continue to suffer irreparable injury to a not insignificant portion of its business, and will lose future opportunities, goodwill, and potential revenue. In contrast, the rock dust blower market is but a small part of GMS's overall business and the negligible harm inflicted on GMS by the

injunction is outweighed by the potential harm to Hafco in denying the injunction. In the context of a permanent injunction, the overall balance of hardships favors Hafco especially where, as here, the injunction only affects a small segment of GMS's business. See I4I Ltd. P'ship, 598 F.3d at 863 (finding balance of hardships weighs in favor of granting permanent injunction where infringing product "relates to only a small fraction of Microsoft's sizeable business"); Pfizer, Inc. v. Teva Pharms. USA, Inc., 429 F.3d 1364, 1382 (Fed. Cir. 2005) ("Simply put, an alleged infringer's loss of market share, without more, does not rise to the loss of exclusivity experienced by a patent owner due to infringing conduct.").

**D. Public Interest**

"The fourth eBay factor requires the patentee to show that `the public interest would not be disserved by a permanent injunction.'" Apple Inc. v. Samsung Elecs. Co., Ltd., 809 F.3d 633, 646 (Fed. Cir. 2015) (quoting eBay, 547 U.S. at 391). There is an "important public interest in protecting patent rights" and the public's interest in this regard was explained as follows:

> The district court did not abuse its discretion in finding that the public interest favors an injunction. Indeed, the public interest strongly favors an injunction. Samsung is correct--the public often benefits from healthy competition. However, the public generally does not benefit when that competition comes at the expense of a patentee's investment-backed property right. To conclude otherwise would suggest that this factor weighs against an injunction in every case when the opposite is generally true. We base this

10

conclusion not only on the Patent Act's statutory right
to exclude, which derives from the Constitution, but
also on the importance of the patent system in
encouraging innovation. Injunctions are vital to this
system. As a result, the public interest nearly always
weighs in favor of protecting property rights in the
absence of countervailing factors. . . .

Id. (emphasis in original); see also Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 704 (Fed. Cir. 2008) ("[I]t is generally in the public interest to uphold patent rights.").

"[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." I4I Ltd. P'ship, 598 F.3d at 863. As a result, this factor weighs against granting injunctive relief prohibiting infringement only "where the product at issue is of unusual social benefit." Presidio Components Inc. v. Am. Tech. Ceramics Corp., No. 08-cv-335-IEG-NLS, 2013 WL 4068833, *7 (S.D. Cal. Aug. 12, 2013) (citing Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc., 579 F. Supp. 2d 554, 560 (D. Del. 2008)); see also Cardsoft, Inc. v. Verifone Holdings, Inc., Case No. 2:08-CV-98-RSP, 2013 WL 5862762, *1 (E.D. Tex. Oct. 30, 2013) ("The public interest factor appears to be otherwise neutral, as the technology and products at issue do not implicate health or safety concerns.").

GMS alleges that the public interest would be disserved by an injunction herein because the use of rock dust blowers

increases safety in coal mines. However, as Joshua Helbig himself testified, there are "thousands" of rock dust blowers on the market. Therefore, enjoining the manufacture and sale of GMS's rock dust blower would not necessarily lead to a shortage of rock dusters. Under these circumstances, the public interest would be served by issuing an injunction to protect Hafco's patent rights. See Celsis In Vitro, Inc. v. Cellzdirect, Inc., 664 F.3d 922, 932 (Fed. Cir. 2012) ("Though LTC argues that it sells products for drug research and development such that the public interest would disfavor enjoining LTC, both LTC and Celsis sell the same products and are in direct competition. In other words, the public can obtain the products from Celsis."); Streck, Inc. v. Research & Diagnostic Sys., Inc., 8:06CV458, 2010 WL 11530582, *4 (D. Neb. Sept. 30, 2010) ("[T]he court finds the public interest will not be disserved by an injunction. Although medical care is involved, there has been no showing that restraining R&D from selling integrated controls would implicate public health and safety concerns. Streck has shown it has the ability to supply the market with necessary quantities of the products. If there were any shortage, laboratories, hospitals, and clinics have the reasonable alternative of testing instruments with nonintegrated controls. An injunction strikes a workable balance between protecting Streck's rights as a patentee

and protecting the public."). Accordingly, this factor weighs in favor of granting injunctive relief.

### III. Conclusion

Having considered Hafco's request for injunctive relief under the traditional four-factor test, the court concludes that Hafco is entitled to the injunction it seeks. For all the foregoing reasons, Hafco's motion for a permanent injunction was **GRANTED**. Given the court's ruling on GMS's motion for a new trial,[**] the motion for enhanced damages, attorney fees, prejudgment interest, and post-judgment interest was **DENIED** without prejudice.

The Clerk is directed to send copies of this Memorandum Opinion to counsel of record.

IT IS SO ORDERED this 12th day of April, 2018.

ENTER:

David A. Faber
Senior United States District Judge

---

[**] By Memorandum Opinion and Order entered on March 30, 2018, the court granted GMS's motion for a new trial nisi remittitur. (ECF No. 99).